# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

(To be supplied by the court)

**FILED**
UNITED STATES DISTRICT COURT
DENVER. COLORADO

**DEC 10 2019**

JEFFREY P. COLWELL
CLERK

L.S. _____, Plaintiff

v.

Keith LS

~~Eric~~ Owen _____,

Patrick Krumholz _____,

Anthony Greco _____,

see attached _____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

## COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

Additional defendants:

Markus Moeder-Chandler

Brett Derickson

Ted Belteau

Lori Cooper

**ATTACHMENT**

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

L.S., 4977 Hawk Meadow Drive, Colorado Springs, Colorado
_____
(Name and complete mailing address)

719-679-2537, lawrencescafuri@gmail.com
_____
(Telephone number and e-mail address)

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Eric Owen, address unknown
_____
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

Defendant 2:    Patrick Krumholz, address unknown
_____
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

Defendant 3:    Anthony Greco, address unknown
_____
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

Defendant 4:    Keith Smith, address unknown
_____
(Name and complete mailing address)

_____
(Telephone number and e-mail address if known)

2

B. DEFENDANT(S) INFORMATION.

Markus-Moeder Chandler, address unknown

Brett Derickson, address unknown

Ted Belteau, address unknown

Lori Cooper, address unknown

ATTACHMENT

## C.   JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

[✓]   Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

First Amendment, Fourteenth Amendment
_____

_____

[ ]   Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of _____.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of _____ (name of state or foreign nation).

Defendant 1 has its principal place of business in _____ (name of state or foreign nation).

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:  First Amendment

Supporting facts: See attached

4

CLAIM TWO:  Fourteenth Amendment

Supporting facts:    See attached

**E.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

See attached.

**F.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

12/9/19
_____
(Date)

(Revised December 2017)

6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**DEC 10 2019**

JEFFREY P. COLWELL
CLERK

Civil Action No. _____

L.S.,

      Plaintiff,

v.

DR. KEITH OWEN, in his official capacity as
Superintendent of Fountain-Fort Carson School District 8 and in his individual capacity; and

DR. LORI COOPER, in her official capacity as
Assistant Superintendent of Fountain-Fort Carson School District 8 and in her individual
capacity; and

DR. PATRICK KRUMHOLZ, in his official capacity as
Principal of Fountain-Fort Carson High School and in his individual capacity; and

MARKUS MOEDER-CHANDLER, in his official capacity as
Assistant Principal of Fountain-Fort Carson High School and in his individual capacity; and

BRETT DERICKSON, in his official capacity as
Assistant Principal of Fountain-Fort Carson High School and in his individual capacity; and

ANTHONY GRECO, in his official capacity as
Assistant Principal of Fountain-Fort Carson High School and in his individual capacity; and

KEITH SMITH, in his official capacity as
Dean of Students of Fountain-Fort Carson High School and in his individual capacity; and

TED BELTEAU, in his official capacity as
Intermediary and in his individual capacity,

      Defendants.

---

**PLAINTIFF L.S.'S**
**VERIFIED COMPLAINT**

---

## INTRODUCTION

1. In February 2019, Fountain-Fort Carson High School (hereafter, "FFCHS") Assistant Principal Anthony Greco and Dean Keith Smith suspended L.S. for two days. L.S. was denied his right to appeal that.

1

2. On April 5, 2019, FFCHS Assistant Principal Markus' Moeder-Chandler suspended L.S. for five days and signaled that the school was looking into further disciplinary action via lengthening the suspension and later issuing an expulsion. Mr. Moeder-Chandler, Mr. Derickson, and Dr. Krumholz (hereafter, "Alarmists") were all part of this consideration.

3. At the later expulsion hearing, Fountain-Fort Carson School District 8 (hereafter, "D8") bypassed due process and did not provide adequate notice. They proceeded to deprive L.S. of deep-seated liberty and property interests, and they expelled L.S. in retaliation for his protected speech.

4. At the expulsion hearing, Mr. Moeder-Chandler, Dr. Krumholz, and Mr. Belteau[] (hereafter, "Indicters") ultimately decided to expel L.S. Superintendent Owen upheld that decision.

## JURISDICTION AND VENUE

5. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. Jurisdiction is conferred on this court, pursuant to 28 U.S.C. §§ 1331 and 1343.

6. This Court has jurisdiction to issue the declaratory relief requested, pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201, 2202.

7. Venue is proper in the District of Colorado, pursuant to 28 U.S.C. § 1391(b). The Defendants reside within the District of Colorado, and all relevant events occurred and will occur in the District of Colorado.

## PARTIES

8. Plaintiff L.S. is a resident of Colorado Springs, Colorado.

9. Defendant Keith Owen is the Superintendent of D8, the administrative building of which is located in Fountain, Colorado. He is sued in his official capacity for injunctive and declaratory relief. He is sued in his individual capacity for punitive, compensatory, and nominal damages.

2

10. Defendant Patrick Krumholz is the Principal of FFCHS, located in Fountain, Colorado. He is sued in his official capacity for injunctive and declaratory relief. He is sued in his individual capacity for punitive, compensatory, and nominal damages.

11. Defendant Markus Moeder-Chandler is an Assistant Principal of FFCHS. He is sued in his official capacity for injunctive and declaratory relief. He is sued in his individual capacity for punitive, compensatory, and nominal damages.

12. Defendant Brett Derickson is an Assistant Principal of FFCHS. He is sued in his official capacity for injunctive and declaratory relief. He is sued in his individual capacity for punitive, compensatory, and nominal damages.

13. Defendant Anthony Greco is an Assistant Principal of FFCHS. He is sued in his official capacity for injunctive and declaratory relief. He is sued in his individual capacity for punitive, compensatory, and nominal damages.

14. Defendant Keith Smith is the Dean of Students of FFCHS. He is sued in his official capacity for injunctive and declaratory relief. He is sued in his individual capacity for punitive, compensatory, and nominal damages.

15. Ted Belteau is the intermediary at the expulsion hearing for FFCHS. He is sued in his official capacity for injunctive and declaratory relief. He is sued in his individual capacity for punitive, compensatory, and nominal damages.

## FACTUAL ALLEGATIONS

16. L.S. was a student in D8 from August 2011 to April 2019.

17. L.S. was a student in FFCHS from August 2016 to May 2017 and a student in the junior class of FFCHS from August 2018 to April 2019.

3

18. L.S. has had a clean academic record, consistently earning A's in his classes. He has had accelerated and advanced placement (hereafter, "AP") classes to the full extent that he had access to them.

19. L.S. had had a very clean disciplinary record before his February suspension. The issue at hand there was of *de minimis* importance, as evidenced by the fact of administrational lenity (a two-day suspension as opposed to the customary five-day suspension), its purported erasure from college records, and the administration having foregone law enforcement involvement. School action in that instance should be read as perfunctory and not serving to further legitimate, actionable interests of the student body.

### The Illustration

20. Somewhere in the last three months of 2018, L.S. made an illustration of another student (hereafter, "SG") in an act of sexual intercourse with Joseph Stalin.

21. In February 2019, L.S. handed this illustration to SG, who subsequently put it in the hands of an administrator at FFCHS. At the end of that day, Greco seized L.S.'s school laptop for further investigation.

22. The next day, Greco and Smith suspended L.S. for two days for "sexual harassment" concerns.

23. After having returned to school, L.S. sent Greco two emails in which he expressed concern and disapproval at the disciplinary action of FFCHS. The thrust of those emails and the attached essay he had written surrounded sexual harassment law. Greco eventually called L.S. to his office.

24. Having arrived to Greco's office, Greco blithely dismissed all of L.S.'s legal claims (and indeed did not even review them), instead arguing that SG's feelings had been hurt, and that that met the threshold requirement for suspension. Greco noted that this rationale had been part of the

school's orthodoxy surrounding suspensions, and one that had been accepted by every member of the school's ruling class.

25. At the end of the conversation, Greco signaled that appealing this decision would be a "waste of time." He continued to maintain that the school's actions had been justified.

### L.S. Writes and Distributes the Contract

26. Over FFCHS' Spring Break (from March 23 to March 31), L.S. read and took notes on a hornbook on contract law. Based on the principles he learned, he wrote a contract. The contract allowed him to illustrate, animate, etc. the signees in acts of "carnal knowledge."

27. L.S. distributed copies of the contract throughout the week of April 5. The contract was given to many more males than females. Signing the contract was not mandatory, and students who did not consent to signing were not coerced into doing so.

28. The contract was "just a joke" that was supposed to send a message about the Administration's misuse and abuse of power. There is much evidence to support this conclusion, both in the actual text of the contract and in the student response to it. L.S. articulated this point in the later expulsion hearing, presenting a document to that effect.

29. Very little to no disruption, fear, or uncomfortableness ensued, both among the teachers and students. What little there might have been certainly does not rise to the level of being "substantial." In fact, no teacher was notified of this contractual activity until the last day of the week, April 5. The circumstances surrounding that day were no different than any other day, lending suspicion to the idea that student discomfort and feelings of unsafety arose *sua sponte*.

30. On April 5, immediately after lunch and continuing into fifth and sixth hours, several female students reported and handed in the contract to some Alarmists—one through a teacher as proxy. One student handed in a copy of the contract to a school resource officer, who then began an investigation which ultimately concluded that the issue at hand did not point to illegality.

5

31. During sixth hour, Markus Moeder-Chandler took L.S. out of his classroom and into his office to discuss subsequent disciplinary action. Throughout the process, various school actors interacted with Mr. Moeder-Chandler regarding this issue. At different points, various actors entered and left the office.

32. Sometime in the middle of this procession, Mr. Moeder-Chandler met with Dr. Krumholz, who then advised expulsion. L.S.'s father (hereafter, "Father") was then called in, and L.S. was issued a 5-day suspension. This suspension was later extended to 10 days, and an expulsion hearing was scheduled later on.

33. The official school reasoning for disciplinary action was initially that the distribution of the contract had caused significant disruption (an allegation for which there is no evidence). Later, the accusation of "behavior that is detrimental to welfare" was added. Here, the school relied on a broad reading of safety which would punish a student from any action, whether done willingly or unwittingly, that negatively affects another student's emotions.

## *Indicters Forego Due Process and Hold a Hearing*

34. On April 15, L.S. came back to school, thinking that the 5-day suspension had expired. During second hour that day, he was taken to Keith Smith's office, where he was told that the suspension had been (arbitrarily) lengthened and an expulsion hearing was set. Mr. Smith told L.S. that a letter to that effect was sent earlier in the previous week, but that the letter might not have actually arrived yet.

35. Another letter (hereafter, "Letter") was then allegedly sent to L.S.'s mother (hereafter, "Mother"), notifying about the upcoming hearing, opportunity to consult with a lawyer, ability to hear all evidence, etc. The administration should have known that Mother could not speak English fluently, for L.S. had told Mr. Moeder-Chandler that at the initial suspension hearing. Letter

6

specified that, if L.S. sought a lawyer to be present, he would have needed to notify the administration at least three days prior to the hearing.

36. It was later discovered that the administration had erroneously mailed Letter to the wrong address, and that no member of L.S.'s family had received it through the mail. One day before the hearing, the administration sent Father a copy of the letter via e-mail to a Yahoo account Father had scarcely used in the preceding four years. There is doubt that this was a bona fide mistake. The administration had consistently, for many years, sent Father e-mails to his newer e-mail address ("@uccs.edu"), not the old Yahoo account.

37. At the hearing, Father told Indicters that he had not received the letter. Indicters nevertheless proceeded, effectively removing L.S.'s right to have an attorney present in violation of the Sixth Amendment. Mr. Belteau presented Father the letter for a few fleeting seconds, giving the impression that Mother had signed it. Reasonable reliance on this inference and the administration's insistence on not talking to a lawyer led to the continuation of the hearing.

38. After the hearing should have ended, Indicters remained in the hearing room after L.S. and Father left. There, Father reports he heard *ex parte* discussion over handing over e-mails to Mr. Belteau.

## Indicters Exclude L.S. from Academic Opportunities and School Events

39. Over the course of his expulsion, Indicters removed L.S.'s access to his school e-mail account, limiting his ability to contact teachers and continue learning while away from school. He could not proceed on his own academic track, effectively stripping away many of L.S.'s opportunities for learning.

40. Before the expulsion, L.S.'s art teacher (Julie McClain) had told L.S. that his art piece would be entered into a competition, for which he could have won a scholarship. After the

7

expulsion, the admittance of the art piece was revoked, and L.S. lost his ability to win at the exhibition.

41. Prom occurred on May 4, but L.S. was denied attendance. He did not have any intention on going to prom, but the expulsion placed the possibility beyond consideration.

42. Many more educational and cultural activities have taken place at the school from April 2019 to today.

## Indicters Continue to Forego Due Process

43. The District, in an effort led by Assistant Superintendent Lori Cooper, sent L.S.'s father a letter instructing him on how to conduct an appeal. That letter included a crucial typo that extended the deadline by a year.

44. Lori Cooper assured L.S.'s father that he would be able to go for an appeal after the district had furnished him all evidence from the proceedings. But when she gave him all the documents, they also closed the door on any appeal.

45. Because of the foregoing, Plaintiff L.S. was denied his right to appeal the district's decision.

## DECLARATORY RELIEF

46. An actual and immediate controversy exists between Plaintiff and Defendants.

47. Plaintiff contends that the issuance of the suspension and expulsion without adequate due process and in retaliation for protected First Amendment activity violates his constitutional rights.

48. Defendants contend that the challenged expulsion complies with the law.

49. Plaintiff is, therefore, entitled to a declaration of rights with respect to this controversy. Without such a declaration, Mr. L.S. will be uncertain of his rights and responsibilities under the law.

8

## INJUNCTIVE RELIEF

50. Plaintiff L.S. is entitled to injunctive relief.

51. Defendants have enforced, and continue to enforce, the challenged expulsion in the manner described in this Complaint.

52. Defendants have acted and are continuing to act under color of state law to deprive Plaintiff of his constitutional rights.

53. Plaintiff L.S. is suffering irreparable injury and will continue to suffer a real and immediate threat of irreparable injury as the result of the existence, operation, and enforcement of the challenged expulsion.

54. Plaintiff has no plain, adequate, or speedy remedy at law.

## FIRST CLAIM FOR RELIEF
### (§ 42 U.S.C. 1983; Deprivation of Procedural Due Process)

55. The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

56. Defendants deprived L.S. of constitutionally-protected property and liberty interests without providing the procedural protections required by the Due Process Clause of the Fifth and Fourteenth Amendments. Defendants also deprived L.S. of his right to an attorney, as required by the Sixth Amendment and the school's own regulations. Thus, Defendants acted without providing adequate notice for a hearing and without providing L.S. a meaningful opportunity to rebut the allegations of FFCHS.

### *The Constitution and State Law Protects a Minor's Right to an Education*

57. Many FFCHS-sponsored functions are of educational and cultural benefit to students.

9

58. As a matter of state and federal policy, every pupil from the ages of 6 to 17 years old, are entitled, as a right, to a public education. C.R.S § 22-33-104. The interests associated therewith are entitled to constitutional protection. *Goss v. Lopez,* 419 U.S. 572-576 (1975) (holding that "[s]tudents facing... suspension from a public school have property and liberty interests that qualify for protection under the Due Process Clause of the Fourteenth Amendment.")

59. As such, the right to access a public school cannot be denied without due process of law under the Fourteenth Amendment to the United States Constitution.

## *Parents' Right to Educational Forum*

60. Plaintiff's parents have a Fourteenth Amendment right to choose the educational forum of the student. This is a basic and fundamental pillar in a parent's right to be the ultimate arbiter of their children's upbringing.

61. The Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests," such as a parent's right to make decisions regarding the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (internal quotations omitted).

62. Parents are the ultimate arbiters of their children's upbringing and *ipso facto* have the right "to be free from state interference with their choice of the educational forum itself,·a choice that ordinarily determines the type of education one's child will receive." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1207 (9th Cir. 2005); *see also Brown v. Entertainment Merchants Assn.* 564 U.S. 786, 804 (2011).

## *Plaintiff's Right to Receive Information and Ideas*

63. Plaintiff has a First Amendment right to receive information and ideas. *Island Trees Union Free School Dist. v. Pico*, 457 U.S. 867.

10

64. FFCHS frequently holds educational, cultural, artistic, and intellectual programs during which information and ideas are distributed to students.

65. Without adequate due process of law, Defendants have deprived Plaintiff of his right to receive information and ideas by issuing the expulsion.

66. Defendants' solution of providing educational access via another school or an online program fails because Defendants have already imposed deprivation of deep-seated interests through their unmitigated expulsion.

### *Plaintiff's Freedom to Contract*

67. Plaintiff's freedom to contract is well-established. *See Universal Concrete v. Turner Const* 595 F.3d 527, 532 (4th Cir. 2010); *Roesgen v. American Home Products Corp.* 719 F.2d 319, 321 (9th Cir. 1983); *DeMeo v. State Farm Mut. Auto Ins. Co.* 686 F.3d 607, 609 (8th Cir. 2012); *St. Francis Reg. v. Blue Cross Blue Shield* 49 F.3d 1460 (10th Cir. 1995).

68. Merely because contracting occurred on school grounds does not grant the school authority to restrict such activity.

### *Violation of Procedural Due Process*

69. By *de facto* forbidding L.S. from appealing his initial suspension and refusing to take L.S.'s claims seriously, Defendants deprived L.S. of liberty and property interests protected by the Due Process Clause.

70. Without providing adequate notice and by *de facto* barring help from an attorney, Defendants deprived L.S. of liberty and property interests protected by the Due Process Clause.

71. They banished L.S. from FFCHS property, functions, and facilities, which are otherwise open to registered D8 students.

72. Defendants failed to provide adequate notice of the expulsion hearing and withheld the right to an attorney from L.S. in direct violation of schoolboard policies and the Sixth Amendment.

73. Wherefore, L.S. is entitled to a declaratory judgement that the expulsion violated his constitutional right to due process; interim and permanent injunctive relief forbidding Defendants to enforce the expulsion; an award of nominal damages; an award of compensatory damages; an award of punitive damages; and such other relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (§ 42 U.S.C. 1983; Retaliation for Exercise of First Amendment Rights)

74. The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

75. In creating and distributing the contract and creating the illustration, L.S. engaged in expression that is protected by the First Amendment of the United States Constitution.

76. L.S. never expressed any opinion or made any statements that could be considered physically threatening or violent toward anyone or anything at FFCHS.

77. Defendants acknowledge that L.S. did not violate any law.

78. And as a result of and in retaliation for L.S.'s expression, he was barred and denied access to an otherwise public area.

### *The First Amendment Protects L.S.'s Speech*

79. L.S.'s speech could not have been reasonably forecasted to produce a substantial material disruption. L.S. had been distributing the contract for the entirety of the week of April 1, and no disruption ensued as a result for the first four days. For the fifth day, there is a significant amount of evidence to suggest that the alleged "disruptions" did not arise *sua sponte* and were definitely not substantial. Under *Tinker*, the school did not have authority to restrict such speech. *Tinker v.*

12

*Des Moines Independent Community School Dist.*, 393 U.S. 503 (1969). For the illustration, there was no disruption in the school as a result of its creation.

80. L.S.'s speech was not "plainly offensive," and therefore could not have been restricted by *Fraser. Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986).

81. L.S.'s speech could not have been reasonably interpreted to bear the school's imprimatur and is not subject to scrutiny under *Hazelwood. Hazelwood School District et al. v. Kuhlmeier et al.*, 484 U.S. 260 (1988).

82. L.S.'s speech did not advocate for illegal drug use and is not subject to *Morse*'s scrutiny. *Morse v. Frederick*, 551 U.S. 393 (2007). *B.W.A. v. Farmington R-7 School Dist.*, 554 F.3d 734 (8th Cir. 2009) (holding that *Morse*'s "narrow holding" could not be applied outside of pro-drug speech); *Barr v. Lafon*, 538 F.3d 564 (6th Cir. 2008) (similarly holding that Justice Alito's concurrence led to a "narrow holding"); *Lowery v. Euverard*, 497 F.3d 584 (6th Cir. 2007) (keeping with Alito's "narrow holding").

83. The school district's reasoning that speech can be restricted based on the reaction of the listener to the speech is fundamentally contradictory with established First Amendment jurisprudence. *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870–71 (1997) (holding that the Communications Decency Act's prohibitions on "offensive" speech are unconstitutional); *Forsyth Cnty., Ga., v. Nationalist Movement*, 505 U.S. 123, 133 (1992) (finding fee ordinance tied to listeners' reaction to speech invalid largely because "[n]othing in the law or its application prevents the official from encouraging some views and discouraging others through the arbitrary application of fees"); *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 154–155 (1969) (understanding that the city's authority to regulate assembly based on "public welfare, peace,

13

safety, health, decency, good order, morals or convenience" permitted it to "unwarrantedly abridge the right of assembly") (internal quotations omitted).

### *Violation of First Amendment Free Speech Rights*

84. The actions of the Defendants here would deter or chill a person of ordinary firmness from engaging in protected speech in the future.

85. Defendants acted intentionally, wantonly, and in reckless disregard for L.S.'s federally-protected Constitutional rights, and without regard to the significant damage such actions would cause.

86. Reasonable officials in Defendants' positions would have known that their actions violated clearly-established constitutional rights.

87. Wherefore, L.S. is entitled to a declaratory judgement that the suspension and expulsion violated his constitutional right to due process; interim and permanent injunctive relief forbidding Defendants to enforce the expulsion; an award of nominal damages; an award of compensatory damages; an award of punitive damages; and such other relief as the Court deems just and proper.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief:

1. An award of nominal damages.

2. An award of punitive damages.

3. An award of compensatory damages.

4. A declaratory judgment holding that by issuing the suspension and expulsion without affording Mr. L.S. due process of law and in retaliation for Mr. L.S.'s exercise of speech protected by the First Amendment, Defendants violated Mr. L.S.'s constitutional rights.

14

5.  A preliminary injunction and permanent injunction rendering the expulsion null and void and prohibiting Defendants from enforcing the expulsion.

6.  An award of Plaintiff's costs pursuant to § 42 U.S.C. 1988.

7.  Such other relief as this Court may deem just and proper.

Dated: December 9, 2019.                    Respectfully submitted,

                                            L.S.

**JURY TRIAL REQUESTED**

15

**Rule 17 Notice**

Plaintiff in this case is filing *pro se* as a minor without the representation of a next friend. Pursuant to Federal Rule of Civil Procedure 17, Plaintiff respectfully acts this court to appoint guardian ad litem for this case.

16

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: December 9, 2019.                    Respectfully submitted,

_____

L.S.

17

JS 44  (Rev. 06/17)    District of Colorado

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
L.S.

## DEFENDANTS
Keith Owen, Patrick Krumholz, Anthony Greco, Markus Moeder-Chandler, Brett Derickson, Ted Belteau

**(b)** County of Residence of First Listed Plaintiff    El Paso
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question
     *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                               *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☒ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
First Amendment, Fourteenth Amendment

Brief description of cause:
Retaliation for protected speech, deprivation of procedural and substantive due process

☐ AP Docket

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ Injunction Damages as deemed just declaratory relief

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions).*
JUDGE _____    DOCKET NUMBER _____

DATE
12/09/2019

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____